# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2014 WY 150

*October Term, A.D. 2014*

**November 19, 2014**

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

MARCY ARGERIS, WSB #6-2774

Respondent.

D-14-0008

## ORDER SUSPENDING ATTORNEY FROM THE PRACTICE OF LAW

[¶1]   **This matter** came before the Court upon a "Report and Recommendation for 30 Day Suspension," filed herein October 21, 2014, by the Board of Professional Responsibility for the Wyoming State Bar, pursuant to Section 16 of the Disciplinary Code for the Wyoming State Bar (stipulated discipline).  After a careful review of the Board of Professional Responsibility's Report and Recommendation, Respondent's "Request for Specific Suspension Dates," Bar Counsel's "Response to Request for Specific Suspension Dates," and the file, this Court finds the Report and Recommendation for 30 Day Suspension should be approved, confirmed and adopted by the Court and that Respondent, Marcy Argeris, should be suspended from the practice of law for a period of thirty (30) days.  It is, therefore,

[¶2]   **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for 30 Day Suspension, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]   **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for 30 Day Suspension, Respondent, Marcy Argeris, shall be, and hereby is, suspended from the practice of law for a period of thirty (30) days, beginning March 15, 2015; and it is further

[¶4]   **ORDERED** that Respondent shall comply with Section 22 of the Disciplinary Code for the Wyoming State Bar.  That Section governs the duties of disbarred and suspended attorneys; and it is further

[¶5]   **ORDERED** that Respondent shall reimburse Washakie County for the $550.00 administrative fee and costs associated with her earlier private reprimand; and it is further

[¶6]   **ORDERED** that Respondent shall pay her attorneys' fees associated with the present disciplinary proceeding; and it is further

[¶7]   **ORDERED** that, on or before May 19, 2015, Respondent shall attend the Wyoming State Bar's "Pathways to Professional Practice" course; and it is further

[¶8]   **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Respondent shall reimburse the Wyoming State Bar the amount of $50.00, representing the administrative costs incurred in handling this matter, as well as pay an administrative fee of $500.00, by paying the total amount of $550.00 to the Clerk of the Board of Professional Responsibility on or before December 31, 2014; and it is further

[¶9]   **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order Suspending Attorney from the Practice of Law, along with the incorporated Report and Recommendation for 30 Day Suspension, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶10]  **ORDERED** that the Clerk of this Court shall docket this Order Suspending Attorney from the Practice of Law, along with the Report and Recommendation for 30 Day Suspension, as a matter coming regularly before this Court as a public record; and it is further

[¶11]  **ORDERED** that the Clerk of this Court cause a copy of the Order Suspending Attorney from the Practice of Law to be served upon Respondent, Marcy Argeris.

[¶12]  **DATED** this 19th day of November, 2014.

BY THE COURT:

/s/

**E. JAMES BURKE**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

OCT 2 1 2014

CAROL THOMPSON, CLERK
by DEPUTY

BEFORE THE SUPREME COURT

STATE OF WYOMING

*In the matter of*    )
*MARCY ARGERIS,*    )
*WSB # 6-2774,*    )    *WSB No. 2014-064*
    )
    )    D-14-0008
*Respondent.*    )

REPORT AND RECOMMENDATION FOR 30 DAY SUSPENSION

THIS MATTER having come before the Board of Professional Responsibility pursuant to Bar Counsel's stipulated motion for suspension of Respondent, and the Board having reviewed the stipulated motion, the affidavit of Respondent in support thereof, and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS:

Findings of Fact

1.    Respondent has been licensed to practice in Wyoming since 1994. At all times relevant to this proceeding, Respondent was the County and Prosecuting Attorney for Washakie County.

2.    In October 2013, Respondent received a stipulated private reprimand from this Board. The following press release accompanied the order of private reprimand:

> The Board of Professional Responsibility issued a private reprimand to a prosecuting attorney who met with several minors and their parents following an incident in which law enforcement personnel discovered the minors after hours on school property, mixing toilet bowl cleaner with balls of aluminum foil in plastic bottles, which led to a chemical reaction that caused the bottles to burst or explode, making a loud noise. The prosecutor told the minors and their parents that they could be charged with felonies or misdemeanors and perhaps federal charges and may be subject to incarceration. The minors cooperated fully with the prosecutor and freely admitted their involvement. School district officials were contacted but declined to pursue school district discipline actions.

> The attorney agreed that the conduct violated Rule 3.8(b), which provides, "A prosecutor in a criminal case shall, prior to interviewing an accused, make reasonable efforts to assure that the accused has been advised of the right to,

and the procedure for obtaining counsel and has been given reasonable opportunity to obtain counsel." The prosecutor violated this rule when the prosecutor interviewed the young men before giving them a reasonable opportunity to obtain counsel. The prosecutor agreed to pay an administrative fee of $500 and costs of $50 to the Wyoming State Bar, and to obtain an additional three hours of CLE in ethics.

3. Respondent was represented in the matter which culminated in the stipulated private reprimand by Evanston attorney, Mark Harris. At Respondent's request, the County had been paying Mr. Harris's fees at the rate of $200.00 per hour, plus expenses. Along with Respondent's Affidavit to the State Bar, Respondent asked Mr. Harris to send the $500.00 administrative fee and the $50.00 cost assessment on her behalf to facilitate an efficient and timely end to this matter. Respondent then asked him to place both items on his billing statement for submission to the County Commissioners. Mr. Harris did so and issued a billing statement dated October 31, 2013, which listed an "administrative fee" of $500.00, a "cost fee" of $50.00, long distance charges of $.23 and postage of $.46, for a total bill of $550.69. On the bottom of the billing statement was written, "Marcy, Please prepare 2 checks for this bill. One in the amount of $500.00 and the other one in the amount of $50.69." As Respondent had with Mr. Harris's other invoices, and pursuant to the manner in which Respondent had been trained to submit billing statements to the County, Respondent submitted the October 31, 2013, billing statement to the Washakie County Clerk for payment, and explained to her that it was for administrative fees associated with the grievance.

4. The Washakie County Clerk prepared two vouchers as a result of the submittal of the October 31, 2013, billing statement. The first requested payment to Harris Law Office in the amount of $500.00, which the County Clerk indicated was "legal fees" on the voucher without Respondent's knowledge. The second requested payment to Harris Law Office in the amount of $50.69, also designated "legal fees." Both vouchers were approved by the Washakie County

2

Commissioners on October 31, 2013, and paid. Although Respondent had told the County Clerk the nature and purpose of the administrative fees and costs, Respondent did not fully and properly inform the County Commissioners of the nature or purpose of the $500.00 administrative fee or the $50.00 cost assessment.

5. Given that the $500.00 administrative fee and the $50.00 in costs were monetary assessments resulting from Respondent's admitted violation of a Rule of Professional Conduct, Respondent agrees that she had a heightened duty to communicate about that matter with the County; that is, to call special attention to the fact that the assessment was a direct result of Respondent's concession that Respondent acted unethically in the underlying matter. In so acting, Respondent engaged in conduct in violation of Rule 8.4(c).[1]

6. Worland resident Mark McGarvin, the complainant in the matter which led to Respondent's private reprimand, reportedly inquired of the County as to what payments had been made to Harris Law Office and discovered that Mr. Harris had paid the $500.00 administrative fee and $50.00 in costs on Respondent's behalf and had been reimbursed for those expenses by the County. Mr. McGarvin reportedly took the matter up with the County Commissioners, protesting that it was an inappropriate use of public funds for the County to pay the administrative fee and costs for Respondent's disciplinary infraction.

7. During a January 7, 2014, executive session meeting of the Washakie County Commissioners at which Respondent was present, there was discussion about the propriety of the County's payment of the $550.00 administrative fee and costs. While not reflected in the

---

[1] The parties expressly reserve the issue whether it was appropriate for Respondent to request payment of the $550.00 administrative fee and costs, and whether it was an appropriate use of public funds for the County to pay it. Accordingly, this stipulated suspension should not be cited as precedent for the notion that it is or is not proper for a governmental employer to pay the administrative fee and costs associated with a government attorney's discipline. Such determination must be made on a case-by-case basis.

3

minutes, Respondent explained the grievance, the stipulation and the administrative fee and costs.

8.      One of the Commissioners asked Respondent whether outside counsel should be retained to advise the County on the issue. Instead of immediately answering yes as Respondent should have, Respondent asked if she could consult with other county attorneys on the issue to see what other counties did regarding the administrative fee and costs. The Commissioners agreed to allow Respondent to consult other county attorneys. Although Respondent attempted to contact other county attorneys, Respondent was unable to provide the Commissioners with an immediate answer.

9.      Two of the County Commissioners thereafter approached Respondent and asked her to reimburse the County for the $550.00 it had paid for the administrative fee and costs. Respondent refused, relying upon W.S. § 18-2-111, which provides generally that judgments rendered against county officials are to be paid by the county.

10.      Upon repeated requests and demands from two of the County Commissioners, on January 17, 2014, Respondent emotionally wrote to the Commissioners, declining their request for permission to seek an opinion from outside counsel. Respondent acknowledges that that refusal constituted a violation of Rule 1.7, which provides in pertinent part, "A lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." *See* Rule 1.7(a)(2), W.R.P.C. Comment 7 to the Rule explains, "The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, if the propriety of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for

4

the lawyer to give a client detached advice." Respondent further acknowledges that her refusal to approve outside counsel also constituted a violation of Rule 1.8, because at that point there was a clearly identified conflict between Respondent's personal interests and those of the County. Respondent's duty, rather than to refuse the request for authority to engage outside counsel, was to insist upon it as required by Rule 1.8.

11. In early April 2014, Mr. McGarvin submitted a second complaint to Bar Counsel in which he alleged that it was improper for Respondent to have the $550.00 administrative fee and costs associated with Respondent's private reprimand paid by the County and that it was an abuse of authority for Respondent to deny the Commissioners' request for outside counsel. Respondent retained Richard Jamieson of Casper to represent her with respect to the second complaint and entered into an agreement to pay Mr. Jamieson $350.00 hour.

12. At the June 3, 2014, executive session meeting of the Washakie County Commissioners, Respondent informed the Commissioners that a new complaint had been filed. Respondent spoke to Commission Chair Aaron Anderson on the phone regarding the new complaint when it was filed, but not formally to the full Board. Respondent informed the Commissioners that the new complaint was regarding the fee and costs, but not the specific wording of the complaint as Mr. McGarvin quoted two of the three Commissioners in the complaint. Respondent testified in her affidavit that she was "emotionally and legally concerned" that the quotes appeared to come from information that was communicated to the Commission in an executive session. Thus, Respondent explains, she did not give the specifics of the complaint, only that it involved the payment of the fee and costs. However, Respondent did state that the complaint was filed against her in her capacity as County and Prosecuting Attorney and not in her individual capacity. This last statement was materially misleading in that

5

the thrust of Mr. McGarvin's complaint was that the County had paid $550.00 administrative fee and costs, that it should have been paid by Respondent out of her own funds and that Respondent was otherwise putting her personal interests ahead of the County's interests. In this regard, Respondent concedes that that conduct constituted a separate violation of Rule 1.4 (duty of reasonable disclosure to client).

13. During the June 3, 2014, executive session meeting of the Washakie County Commissioners, Respondent asked the County to pay the fees for counsel to represent Respondent in the second McGarvin complaint. While Respondent did communicate with one Commissioner (Aaron Anderson) by phone when the Complaint was filed, Respondent did not go to the full Board until the June 3, 2014, executive session to inform the Commissioners that she had already retained Mr. Jamieson. Additionally, at that June 3, 2014 meeting Respondent did not inform the Commissioners that Respondent had entered into an agreement to pay Mr. Jamieson $350.00 per hour, a higher hourly rate than had been paid to Mr. Harris, her attorney in the first disciplinary proceeding. Respondent concedes that that failure to disclose this information constituted another violation of Rule 8.4(c). The minutes of the June 3, 2014, meeting state, "Approval was given for County Attorney Marcy Argeris to hire outside counsel for a grievance filed against her as county attorney."

14. In the same June 3, 2014 executive session with the County Commissioners, Respondent reviewed with them the statutes on executive sessions. Soon after the meeting, one of the Commissioners (Aaron Anderson) requested outside counsel for advice on release of information discussed at executive session meetings. Respondent immediately agreed. Respondent had previously been working on a "pool" of attorneys whom she could suggest to the Commissioners when the need for outside counsel arose. Since Matt Winslow was the only

6

person Respondent had been able to communicate with to date, Respondent suggested Mr. Winslow to Commissioner Anderson. He requested that Respondent invite Mr. Winslow to the next Commissioner meeting.

15. On June 25, 2014, Respondent wrote a letter to the Commissioners addressing the issues that Commissioner Anderson had raised and authorized the Commission to hire outside counsel for the executive session issues. This letter stated, "Pursuant to W.S. 18-2-110 please consider this memo authorization to hire and counsel with [Cody attorney] Matt Winslow regarding executive sessions. . . Please note that his legal services will be paid out of the county's general fund." Respondent should have recused herself from any and every issue as it related to this case upon learning of the new allegations and complaint, regardless of whether it was the payment of the original fee and costs or executive session issues as they related to Respondent's position as county and prosecuting attorney.

16. On June 30, 2014, the Commissioners responded to Respondent's letter authorizing them to hire Mr. Winslow on a limited scope. The Commissioners identified several questions stemming from the October 2013 invoice from Harris Law Office:

1) What information we have received from your office is public and what is confidential?
2) Was the invoice submitted to us in October 2013 by Harris Law Office appropriately submitted in a way which allowed us to understand what we were paying for?
3) Is it appropriate for the county to pay for fees assessed by the Wyoming Bar Association?
4) What are the commissioner's options for recourse to deal with disagreements or concerns that arise from actions taken by our own legal counsel?

The letter concluded, "Due to the interconnection of these questions and your obvious conflict of interest in relation to issues raised by the commission, we respectfully request outside counsel on a broader basis than you have authorized in your June 25th letter. Given your conflict of

7

interest we feel that it is inappropriate for you to designate who we hire or to try to control the scope of our request to anything less than the areas outlined above." This letter convinced Respondent that she was not communicating effectively with the Commissioners.

17. Respondent responded to the Commissioners' letter ten days later with a letter authorizing the commissioners to hire outside counsel as requested in their June 30, 2014 letter. In said letter dated July 10, 2014, Respondent also disclosed, "I have retained Jamieson & Robinson out of Casper at an hourly fee of $350."

18. Respondent agrees that the foregoing conduct constitutes violations of Rules 1.4, 1.7, 1.8 and 8.4(c) of the Wyoming Rules of Professional Conduct. Respondent is extremely remorseful about said conduct, and desires to accept responsibility and make restitution in this matter. Accordingly, Respondent agrees to reimburse the County for the $550.00 administrative fee and costs assessed in connection with the private reprimand and further agrees to pay the administrative fee, costs and her attorney's fees associated with this disciplinary proceeding out of her own funds. In the event the Wyoming Supreme Court accepts the Board's recommendation, Respondent agrees to attend the Pathways to Professional Conduct course within six months of the Court's order of suspension. While Respondent contends that she did not intend to violate the Rules of Professional Conduct, nor harm the County or its Commissioners, Respondent concedes that she acted deliberately and not negligently in the various rules violations set forth above, especially considering the heightened duty owed as an elected official.

## Conclusions of Law

19. In determining the appropriate sanction for Respondent's misconduct, the Board is guided by the American Bar Association's Standards for Imposing Lawyer Sanctions. *See,*

most recently, *Bd. of Prof. Resp. v. Richard*, D-14-0001 (slip op. August 1, 2014). Standard 3.0 provides, "In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:

(a) the duty violated;
(b) the lawyer's mental state;
(c) the actual or potential injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating factors."

## The Duties Violated by Respondent

20.    Standard 4.3 sets forth the sanction guidelines for lawyers who breach a duty owed to a client by failing to avoid a conflict of interest in violation of Rules 1.7 and 1.8:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conflicts of interest:

4.31    Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):
(a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or
(b) simultaneously represents clients that the lawyer knows have adverse interests with intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; or
(c) represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client.

4.32    Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

4.33    Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

4.34    Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation

9

will adversely affect another client, and causes little or no actual or potential injury to a client.

21.     Standard 4.6 sets forth the sanction guidelines for lawyers who engages in deceit directed toward a client:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases where the lawyer engages in fraud, deceit or misrepresentation directed toward a client:

4.61    Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious or potential serious injury to a client.

4.62    Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

4.63    Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

4.64    Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of negligence in failing to provide a client with accurate or complete information, and causes little or no actual or potential injury to a client.

### Respondent's Mental State

22.     The preamble to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

23.     As indicated above, Respondent concedes that she acted intentionally, not negligently, in the various rules violations set forth above.

10

## The Injury Caused by Respondent's Conduct

24. The ABA Standards define "injury" as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." The Standards indicate that the level of injury can range from "serious" injury to "little or no" injury; "a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury."

25. Respondent concedes that the injury or potential injury caused to the County by Respondent's conduct includes (1) the initial $550 expense borne by the county when it paid the administrative fee and costs without the Commission being fully aware of what those items were; (2) the deterioration of the relationship between the County Commissioners and her office; (3) the delay in obtaining her permission to retain outside counsel; and (4) the potential expense borne by the County in paying for her lawyer in the second grievance.

## Aggravating and Mitigating Factors Associated with Respondent's Misconduct

26. Once it has found professional misconduct and has determined the level of injury caused by the misconduct, the Board is next required to consider aggravating and mitigating factors in selecting the appropriate sanction. In this regard, ABA Standard 9.0 provides as follows:

9.1 *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2 *Aggravation*

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:

11

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of the victim;

(i) substantial experience in the practice of law;

(j) indifference in making restitution; and

(k) illegal conduct, including that involving the use of controlled substances.

9.3    *Mitigation.*

9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

27. Respondent agrees that the following aggravating factors are present: (1) prior disciplinary offense, *i.e.*, the 2013 private reprimand; (2) multiple offenses; (3) the delay in obtaining her approval for outside counsel and subsequent deterioration in relationships with the Commissioners; and (4) substantial experience in the practice of law.

28. The parties stipulate that the following mitigating factors are present: (1) cooperative effort toward proceedings; and (2) remorse.

29. Respondent agrees that the appropriate sanction for her misconduct is a 30 day suspension of her right to practice law. Respondent further stipulates to the issuance of the following press release:

> The Wyoming Supreme Court today issued an order suspending Worland attorney Marcy Argeris from the practice of law for a period of thirty days.
>
> In a prior disciplinary proceeding, Ms. Argeris, who was then the Washakie County and Prosecuting Attorney, stipulated to a private reprimand, which was subsequently issued by the Board of Professional Responsibility on October 15, 2013. The press release which was issued for the private reprimand described Ms. Argeris' misconduct as follows:
>
>> "The Board of Professional Responsibility issued a private reprimand to a prosecuting attorney who met with several minors and their parents following an incident in which law enforcement personnel discovered the minors after hours on school property, mixing toilet bowl cleaner with balls of aluminum foil in plastic bottles, which led to a chemical reaction that caused the bottles to burst or explode, making a loud noise. The prosecutor told the minors and their parents that they could be charged with felonies or misdemeanors and perhaps federal charges and may be subject to incarceration. The minors cooperated fully with the prosecutor and freely admitted their involvement. School district officials were contacted but declined to pursue school district discipline actions.
>>
>> "The attorney agreed that the conduct violated Rule 3.8(b), which provides, 'A prosecutor in a criminal case shall, prior to interviewing an accused, make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining counsel and has been given reasonable opportunity to

13

obtain counsel.' The prosecutor violated this rule when the prosecutor interviewed the young men before giving them a reasonable opportunity to obtain counsel. The prosecutor agreed to pay an administrative fee of $500 and costs of $50 to the Wyoming State Bar, and to obtain an additional three hours of CLE in ethics."

The order of private reprimand required Ms. Argeris to pay an administrative fee of $500.00 and costs in the amount of $50.00 to the Wyoming State Bar. The propriety and legality of asking the County to pay the administrative fee and costs is specifically undecided, however, the manner in which Mr. Argeris made such request has been deemed inappropriate. Ms. Argeris asked the attorney who represented her in the private reprimand matter to pay the administrative fee and costs in an effort to facilitate a timely conclusion to the first grievance. The payment of the original fee and costs were then included on the attorney's final billing statement. As she had with the other billing statements from her attorney, Ms. Argeris submitted the final billing statement with little explanation to the Washakie County Clerk for payment. Ms. Argeris did not fully and properly inform the county commissioners of the nature or purpose of the $500.00 administrative fee or the $50.00 cost assessment that appeared on the bill. Given that these charges were monetary assessments resulting from Ms. Argeris' admitted violation of a rule of professional conduct in the underlying disciplinary proceeding, Ms. Argeris had a heightened duty to communicate about that matter with the county; that is, to call attention to the fact that the assessment was a direct result of Ms. Argeris' concession that she acted unethically in the underlying matter. In failing to make that disclosure, Ms. Argeris engaged in conduct in violation of Rule 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation given the heightened duty to communicate and disclose the nature of the assessments

A member of the public discovered that the county had paid the administrative fee and costs associated with the private reprimand and protested that payment to the Washakie County Commissioners. The commissioners requested that Ms. Argeris reimburse the county for the $550.00 it had paid for the administrative fee and costs and give permission for the county to engage outside counsel to advise the commissioners regarding the propriety of the payment. Instead of insisting on outside counsel, Ms. Argeris suggested that she first seek information from other county attorneys regarding the matter. Although the commissioners agreed, Ms. Argeris should have simply given them immediate authority to seek outside counsel. Two of the commissioners later approached Ms. Argeris informally, but Ms. Argeris refused repayment and did not properly refer the Commission to outside counsel

Ms. Argeris' refusal of the commissioners' request for authority to engage outside counsel constituted a violation of Rule 1.7, which provides, "A lawyer

shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." A comment to Rule 1.7 explains, "The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, if the propriety of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Ms. Argeris' refusal to approve outside counsel also constituted a violation of Rule 1.8, because there was a clearly identified conflict between Ms. Argeris' personal interests and those of her client, the county. Ms. Argeris' duty, rather than to refuse the request for authority to engage outside counsel, was to insist upon it as required by Rule 1.8.

The person who first challenged the county's payment of the $550.00 administrative fee and costs then submitted a complaint to the Wyoming State Bar, alleging that it was professional misconduct for Ms. Argeris to request that the $550.00 administrative fee and costs associated with her private reprimand be paid by the county and that it was an abuse of Ms. Argeris' authority to deny the commissioners' request for outside counsel.

Ms. Argeris asked the commissioners to pay her attorney's fees for the new complaint as they had in the earlier disciplinary proceeding. When she made that request, Ms. Argeris did not disclose that she had already retained counsel at a higher rate than the county had paid Ms. Argeris' counsel in the earlier matter. When asked what the new investigation was about, Ms. Argeris told the commissioners that it regarded the $550 fees/cost but that she could not provide the full details of the complaint as it involved statements from the commissioners but that it involved her duties as county attorney and not her personal conduct. Ms. Argeris' misrepresentation of the nature of the new disciplinary complaint constituted another violation of Rule 8.4(c). It also constituted a violation of Ms. Argeris' duty under Rule 1.4 to maintain reasonable communication with her client. Finally, Ms. Argeris' failure to inform the commissioners that she had already retained counsel at a much higher hourly rate than the county paid to her attorney in the earlier disciplinary proceeding constituted another instance of conduct in violation of Rule 8.4(c).

Following Bar Counsel's investigation of the second complaint, Ms. Argeris, understanding her heightened duties as an elected official, expressed deep remorse for her conduct, conceding that her actions violated Rules 1.4, 1.7, 1.8 and 8.4(c) of the Wyoming Rules of Professional Conduct. Ms. Argeris agreed that a 30 day suspension of her right to practice law was an appropriate sanction for such misconduct. Ms. Argeris further agreed to reimburse the county the $550.00 administrative fee and costs assessed in connection with the private reprimand, and to pay all costs and attorney's fees associated with her suspension. She also agreed to attend the Wyoming State Bar's "Pathways to Professional Practice" course within six months of the order of suspension.

15

The Board of Professional Responsibility approved the terms of the stipulated suspension and recommended the stipulated disposition to the Wyoming Supreme Court. The Court's order of suspension adopted the terms of the stipulated suspension and ordered Ms. Argeris to pay an administrative fee of $550.00 and costs of $50.00 to the Wyoming State Bar.

30. Because the Board approved the stipulated disposition and recommendation to the Wyoming Supreme Court, Respondent agreed to waive her right to file an objection to same with the Court as provided in Section 21 of the Disciplinary Code.

## Recommendation

In consideration of the foregoing, the Board of Professional Responsibility recommends that Respondent:

(1) receive a 30 day suspension for violation of Rule 1.4 (communication with client); Rules 1.7 and 1.8 (conflict of interest); and Rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation) of the Wyoming Rules of Professional Conduct;

(2) be required to reimburse Washakie County for the $550.00 administrative fee and costs associated with her earlier private reprimand;

(3) be required to pay her attorneys' fees associated with the present disciplinary action;

(4) be required to attend the Wyoming State Bar's "Pathways to Professional Practice" course within six months of the order of suspension; and

(5) be ordered to pay the administrative fee in the amount of $500.00 and administrative costs of $50.00 associated with this proceeding within ten days of approval of this report and recommendation by the Wyoming Supreme Court.

16

Dated October __16__, 2014.

Jenifer E. Scoggin, Chair
Board of Professional Responsibility
Wyoming State Bar

17

# CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the **Report and Recommendation for Suspension** was mailed by United States Mail, first class postage prepaid, on this 21st day of October, 2014, to the following:

Marcy Argeris
Washakie County Attorney's Office
1001 Big Horn Avenue, Suite 108
Worland, WY 82401

Richard R. Jamieson
John H. Robinson
Jamieson & Robinson, LLC
214 South Grant Street
Casper, WY 82601

Brandi Robinson, Clerk
Board of Professional Responsibility

18